UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 6:09-cr-180-Orl-31KRS

CINDY HARRINGTON

**UNITED STATES' TRIAL BRIEF**

This matter is before the Court pending trial on Monday, March 29, 2010.  As a service to the Court and in order to streamline the upcoming trial, the United States files this Trial Brief.

**I.  Procedural History[1]**

On September 16, 2009, Cindy Harrington ("HARRINGTON") was indicted for Theft or Conversion of U.S. Government Money, in violation of 18 U.S.C. § 641 (Count One); False Statement to an Agency of the United States, in violation of 18 U.S.C. § 1001 (Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, Sixteen); and Worker's Compensation Fraud, in violation of 18 U.S.C. § 1920 (Counts Three, Five, Seven, Nine, Eleven, Thirteen, Fifteen, and Seventeen).  Doc. 1.

On September 18, 2009, HARRINGTON made her initial appearance.  Doc. 8.

Trial was initially set for the trial term beginning in November 2009.  Doc. 9 at 7-8.

The trial has been continued several times on HARRINGTON's motions and also reset for a later date during this month.  Docs. 17, 19, 23, 25, 29.

---

[1] This section does not include every procedural event in this case, but rather notes those events relevant to the issues before the Court.

## II. Worker's Compensation Fraud and Conversion of U.S. Property Overview

Worker's compensation fraud cases are typically proven in one of two ways.  First, in an "activity case," the United States may show that the allegedly disabled person's claimed limitations are not so severe as to keep the person from working, which is usually proven by showing documented physical activity inconsistent with the person's alleged injuries and limitations.  Second, in an "employment case," the fraud is proven by showing that while the person could not work for the United States, he or she managed to work in another capacity.  This case represents both an activity and employment case.

### A.  Importance of DOL Forms

Decisions consistently stress the importance of the broad language (listed below) of the forms a disability payment recipient must fill out to begin or continue receiving disability payments.[2]  These forms establish the foundation for the fraudulent nature of a person's statements when that person is untruthful in claiming disability and otherwise places that person on notice of the consequences of her actions.  United States v. Rhodes, 177 F.3d 963, 967 (11th Cir. 1999) (establishing the basis for believing that the defendant knew the form would be mailed); United States v. Webber, 536 F.3d 584, 587-88, 598-99 (7th Cir. 2008) (detailing the broad language of CA-7 and 1032 forms); United States v. Harms, 442 F.3d 367, 370, 373 (5th Cir. 2006) (citing the language of the Form 1032 and describing the disclosure requirement as "wide-ranging"); United States v. Garner, 148 Fed. Appx. 269, 272 (6th Cir. 2005) (unpublished) (noting the precise and broad language

---

[2] Because worker's compensation fraud cases are not prosecuted as often as, for instance, narcotics cases, the legal research in this brief is broadened to address cases across the country and beyond the Eleventh Circuit.

of the CA-7 form); United States v. Banks, 123 Fed. Appx. 246, 247 (8th Cir. 2005) (unpublished) (citing the language and warning in the CA-1032 document).

### B.  Strength of the Evidence

As described below, the United States anticipates its evidence will be sufficient to support a conviction as both an activity and employment case.  Several decisions have upheld jury verdicts with less evidence than the United States anticipates will be presented in this case.  United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (finding sufficient evidence in an employment case where defendant drove a truck for his wife's trucking company); United States v. Lavigne, 282 Fed. Appx. 790, 792-93 (11th Cir. 2008) (unpublished) (finding sufficient evidence in an employment case where the defendant ran a dog breeding and kennel operation and earned income by renting houses that she owned); Webber, 536 F.3d at 598 (finding sufficient evidence of willfulness in an employment case where the defendant controlled a business, entered contracts and transactions on behalf of the business, and performed other tasks related to the business); Harms, 442 F.3d at 374-75 (finding sufficient evidence in an employment case based on the defendant's connection with and work as a pilot for an airline); United States v. Tribble, 209 Fed. Appx. 332, 335-337 (4th Cir. 2006) (unpublished) (finding sufficient evidence in an activity case where the defendant installed siding and performed other home repairs, gardened, performed yard work, hunted, fished, and drove an automobile); United States v. Frokjer, 415 F.3d 865, 868-69 (8th Cir. 2005) (finding sufficient evidence in an activity case where the defendant was observed and videotaped lifting grocery bags, opening car doors, and moving bulky objects into the back of the truck); United States v. Bauska, 119 Fed. Appx. 40, 41-42 (9th Cir. 2004) (unpublished) (finding sufficient evidence in an

employment case where the defendant advertised his business and also negotiated a business transaction with an undercover agent); Garner, 148 Fed. Appx. at 270-73 (finding sufficient evidence in an employment case where the defendant operated her own Subway restaurant and shared a FedEx distribution route with her husband while also noting the physical nature of the work); Banks, 123 Fed. Appx. at 247 (finding sufficient evidence in an employment case where the evidence consisted almost exclusively of business documentation in the defendant's name).

## C.   Notice of the Charges Against Her

Based on several pleadings by HARRINGTON, including the proposed jury instructions and recently denied and significantly out of time motion to dismiss, the United States anticipates HARRINGTON may claim the indictment is otherwise defective in this case.  Several courts have rejected challenges to a worker's compensation indictment based on the indictment's relationship to the proof presented at trial.  Lavigne, 282 Fed. Appx. at 793 (upholding the indictment and noting the "proof at trial and the allegations in the indictment should correspond so that (1) 'the defendant is properly notified of the charges so that he may present a defense; and (2) the defendant is protected against the possibility of another prosecution for the same offense.'") (citation omitted); United States v. Jordan, 582 F.3d 1239, 1245-46 (11th Cir. 2009) (upholding an indictment charging 18 U.S.C. § 641 because it "presents the essential elements of the charged offense, [] notifies the accused of the charges to be defended against, and [] enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.") (citation omitted); See Harms, 442 F.3d at 372 (citations omitted).  Moreover, the United States notes that the present indictment

4

is not a speaking indictment which tends to limit the United States to a certain theory, but rather strictly complies with the requirements of an indictment in a simple manner.

### D.  HARRINGTON's Proposed Jury Instructions

HARRINGTON has submitted proposed jury instructions which graft language of the indictment into the standard jury instructions.  Doc. 41 at 28 (second element), 30 (first element).  The United States notes that the indictment cannot create an additional element of proof, as Congress, not the United States Attorney's Office or grand jury, determines the requisite conduct that violates the criminal code.  United States v. Deverso, 518 F.3d 1250, 1258 n.2 (citations omitted).  Additionally, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") has upheld a district court's determination to not depart from the standard jury instructions in a worker's compensation fraud case.  Futrell, 209 F.3d at 1289.

Moreover, HARRINGTON's proposal to include a civil jury instruction defining employee is not appropriate in this case.  See Doc. 41 at 22-23.  This instruction has no relation to the clear and broad language of the forms that HARRINGTON falsified.  Bauska, 119 Fed. Appx. at 42 (upholding the trial court's determination not to instruct the jury on the meaning of "business enterprise" based on the importance of reviewing the term in the context of the entire form and concluding an IRS definition was not dispositive to the DOL form's meaning, and also upholding the exclusion of expert testimony relating to the meaning of "business enterprise").  Accordingly, this civil instruction should not be given to the jury at the close of the evidence.

### E.  Conversion Under 18 U.S.C. § 641 and Proposed Instruction

HARRINGTON is charged with conversion of money belonging to the United States under 18 U.S.C. § 641, and the United States notes that conversion is a means of theft which acts to cover a broad variety of larcenous acts.  Morissette v. United States, 342 U.S. 246, 272 (1952); United States v. McRee, 7 F.3d 976, 982 (11th Cir. 1993). Accordingly, the United States requests that the Court's charge at the end of the trial regarding a violation of 18 U.S.C. § 641 include an accurate definition of conversion, especially as other means of larceny are defined in the standard jury instruction.  See Doc. 38 at 22-23 (standard jury instruction for 18 U.S.C. § 641).

### III.  Factual Background[3]

### A.  Disability Claim, Payments, and Statements by Harrington

HARRINGTON was employed as a rural mail carrier with the United States Postal Service ("USPS") for over a decade before claiming to have injured her neck on June 18, 2005, while lifting a mail tray.  Since her initial claim of the neck injury, HARRINGTON began receiving disability payments from the Department of Labor ("DOL"), Office of Worker's Compensation Programs ("OWCP"), in late 2005.  Between 2005 and September 2009, HARRINGTON received over $180,000.00 in payments from the United States regarding her alleged disability.  HARRINGTON received the disability payments into her Wachovia bank account via direct deposits and in paper check form at her address in Volusia County.  The payments were made by the Department of Treasury out of the general treasury fund, and were paid on behalf of the DOL, which administered the OWCP

---

[3]This section details a brief statement of facts, but does not set forth every fact the United States anticipates presenting at trial.

payments for the USPS.  The USPS is required to reimburse the DOL for the payments to HARRINGTON, and the USPS receives no congressional funding, rather meeting its budgetary obligations through the sale of postage.

Throughout her time on disability, HARRINGTON was initially notified of her obligations of truthful and forthright reporting in an initial letter and later filled out several forms to substantiate her claims that she was disabled and not working in any capacity. HARRINGTON never indicated any outside work in any capacity and never indicated the true extent of her physical capabilities.  To the contrary, HARRINGTON filled out and submitted several forms in support of her disability claims, including CA-7 and EN 1032 forms.  The CA-7 forms address requests for back pay.  The EN 1032 form is an annual declaration made by the person claiming disability.

The CA-7 forms state in relevant part:[4]

SECTION 3.  You must report all earnings from employment (outside your federal job); include any employment for which you received a salary, wages, income, sales commissions, piecework, or payment of any kind during the period(s) claimed in Section 2.  Include self-employment, involvement in business enterprises, as well as service with the military forces.  Fraudulent concealment of employment or failure to report income may result in forfeiture of compensation benefits and/or criminal prosecution.  Have you worked outside your federal job for the period(s) claimed in Section 2.

SECTION 7.  I hereby make a claim for compensation because of the injury sustained by me while in the performance of my duty for the United States.  I certify that the information provided above is true and accurate to the best of my knowledge and belief.  Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain

_____

[4] The CA-7 form for October 26, 2005 (Counts Two and Three), did not include the extensive listing in Section 3, but rather included the question: "Have you worked outside your federal job during the period(s) claimed in Section 2? (Include salaried, self-employed, commission, volunteer, etc.)."   The other CA-7 forms noted in the indictment include the above language.

compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.  In addition, a felony conviction will result in termination of all current and future FECA benefits.

HARRINGTON filled out, signed, and submitted CA-7 forms on October 26, 2005 (Counts Two and Three), December 23, 2005 (Counts Four and Five), January 9, 2006 (Counts Six and Seven), January 23, 2006 (Counts Eight and Nine), and February 28, 2008 (Counts Fourteen and Fifteen).  HARRINGTON never disclosed any income or employment on the CA-7 forms, nor did HARRINGTON advise of her true physical capabilities and medical condition.

The EN 1032 forms state in relevant part:

The information requested in this letter is required in connection with your benefits under the Federal Employees' Compensation Act (FECA), 5 U.S.C. 8101 et seq. This information will be used to decide whether you are entitled to continue receiving these benefits, or whether your benefits should be adjusted.

WARNING

A FALSE OR EVASIVE ANSWER TO ANY QUESTION, OR THE OMISSION OF AN ANSWER, MAY BE GROUNDS FOR FORFEITING YOUR COMPENSATION BENEFITS AND SUBJECT YOU TO CIVIL LIABILITY. A FRAUDULENT ANSWER MAY RESULT IN CRIMINAL PROSECUTION. ALL STATEMENTS ARE SUBJECT TO INVESTIGATION FOR VERIFICATION.

This statement covers the 15 months prior to the date you complete and sign the form.  Your signature at the end of the statement certifies that you have supplied all information requested for that period of time.

PART A – EMPLOYMENT

Read this section completely before answering the questions below and on the next page.

Report ALL employment for which you received a salary, wages, income, sales commissions, piecework, or payment of any kind.  Such employment includes service with the military forces of the United States, including the National Guard,

Reserve component, or other affiliates.

Report ALL self-employment or involvement in business enterprises. These include but are not limited to farming; sales work; operating a business, including a store or a restaurant; and providing services in exchange for money, goods, or other services. The kinds of services which you must report include such activities as carpentry, mechanical work, painting, contracting, child care, odd jobs, etc. Report activities such as keeping books and records, or managing and/or overseeing a business of any kind, including a family business. Even if your activities were part-time or intermittent, you must report them.

Report as your "rate of pay" what you were paid. Include the value of such things as housing, meals, clothing, and reimbursed expenses, if they were received as part of your employment.

Report ANY work or ownership interest in any business enterprise, even if the business lost money or if profits or income were reinvested or paid to others. If you performed any duties in any business enterprise for which you were not paid, you must show as rate of pay what it would have cost the employer or organization to hire someone to perform the work or duties you did, even if your work was for yourself or a family member or relative. You need not list ownership in any publicly traded business.

SEVERE PENALTIES MAY BE APPLIED FOR FAILURE TO REPORT ALL WORK ACTIVITIES THOROUGHLY AND COMPLETELY.

1. Did you work for any employer during the past 15 months?

2. Were you self-employed or involved in any business enterprise in the past 15 months?

3. If you answered "No" to both questions 1 and 2, state whether you were unemployed for all periods during the past 15 months: Yes or No

PART B – VOLUNTEER WORK

During the past 15 months, did you perform any volunteer work for which ANY FORM of monetary or in-kind compensation was received? Yes or No

PART H – CERTIFICATION

I know that anyone who fraudulently conceals or fails to report income or other information which would have an effect on benefits, or who makes a false statement or misrepresentation of a material fact in claiming a payment or benefit under the Federal Employees' Compensation Act may be subject to criminal prosecution, from

which a fine or imprisonment, or both, may result.

I understand that I must immediately report to OWCP any improvement in my medical condition, any employment, any change in the status of my claimed dependants, any third party settlement, and any change in income from Federally assisted disability or benefit programs.

I certify that all the statements made in response to questions on this form are true, complete and correct to the best of my knowledge and belief.  I have placed "Not Applicable" (N/A) or "None" next to those questions that do not apply to me or my claim.

HARRINGTON filled out, signed, and submitted EN 1032 forms on March 1, 2006 (Counts Ten and Eleven), October 9, 2007 (Counts Twelve and Thirteen), and October 10, 2008 (Counts Sixteen and Seventeen).  HARRINGTON never indicated any outside employment or business association in any of the EN 1032 forms and never indicated any improvement in her medical condition or the true nature of her physical capabilities.

HARRINGTON was mailed an EN 1032 form in October 2009, but failed to fill out and submit that form, causing her disability payments to stop.

### B.  Modified Clerk Position

In April 2008, HARRINGTON was offered a limited duty job with the post office in Port Orange, Florida, where she had worked for years, but rejected the offer citing medical issues and never returned to work.

### C.  Operation Jackfrost

In early 2008, a fictitious marketing survey was mailed to disability payment recipients by the USPS as part of an effort ("Operation Jackfrost") to determine if any of the disability payment recipients were not disabled as they claimed.  HARRINGTON filled out the fictitious survey and indicated that she was self-employed in a part-time capacity, had an annual income of $25,000 - $49,999, worked variable hours, participated in skiing

during the last twelve months, and participated in bicycling (4 times per month) and scuba diving (1 time per month) during the last twelve months.  HARRINGTON indicated she traveled to Europe for pleasure and stayed in a hotel 11 or more nights during the last year. HARRINGTON also stated she owned a boat, and indicated she visited Wal-mart, Home Depot, Lowe's, and Office Depot.  HARRINGTON signed the survey and provided her address, phone number, and email account.

### D.  Followup Investigation

As a result of the survey, USPS began investigating HARRINGTON.  The results of the investigation revealed that HARRINGTON worked and held an ownership interest in a business while she was receiving disability benefits and also performed a number of recreational and sporting activities inconsistent with her claimed injuries.  The investigation involved the execution of a federal search warrant at HARRINGTON's residence and business address in May 2009, surveillance which resulted in photographs of HARRINGTON using a pump sprayer to clean her pool area, as well as other investigative steps.  Several days after the search warrant was executed, a seizure warrant was executed on HARRINGTON's bank account and the balance of the funds were seized as criminal proceeds.

### E.  Activity Case

Regarding HARRINGTON's activities and actual physical condition, the investigation revealed as follows.  In December 2005, HARRINGTON purchased a thirty-three foot motor boat named "Free Ride," for over $150,000.00.  The boat was later used by HARRINGTON, friends, and family to travel and scuba dive, among other activities. Certified records show that HARRINGTON is certified as an open water and advanced

open water diver.

Items photographed and recovered during the execution of the federal search warrant at HARRINGTON's home in May 2009 corroborate her extensive travels and participation in snow skiing, bicycling, bungy jumping, and scuba diving.  Moreover, her 2008 diary reflected that she worked out frequently at the gym (on occasion to the point of injuring her neck due to too many neck weights), swam at the gym and elsewhere, did pilates, skied in Switzerland and elsewhere (during which she hurt her knee), traveled to Iceland, went for several dingy boat rides, went to the Yacht club several days after submitting a CA-7 form, danced, drank to the point of having a hangover, took the boat out frequently, played a bat and ball game on an island during a boat trip, attended jet ski rallies, pressure washed her boat, snorkeled, scuba dived, danced and drank at a full moon party, and partied to 2:30 a.m., among other fun-filled activities.

Photographs and video recovered from HARRINGTON's computer and her husband's publicly available website show HARRINGTON doing a flip on a trapeze, downhill snow skiing, dancing, dancing while drinking, wearing scuba diving gear, horseback riding, horseback riding on the beach and in the water, sailing, climbing a lighthouse, jet boating, cave tubing, hiking, preparing to bungy jump, and wearing a helmet for bike riding.  Computer forensic evidence, travel records, and other evidence show HARRINGTON performed these feats during the time she was receiving disability payments.

The United States further expects several medical professionals who dealt directly with HARRINGTON to testify to HARRINGTON's false statements to them regarding her abilities which were communicated to the DOL in support of HARRINGTON's claim.  These

statements were inconsistent with her photographed, videotaped, and otherwise documented (diary) activities during the time periods surrounding her medical appointments.  HARRINGTON also failed a functional capacity evaluation by not giving her full effort while seeking to support her disability.  See Frokjer, 415 F.3d at 869 (functional capacity test forming part of the government's case).

## F.  Employment Case

Regarding HARRINGTON's work and business associations, the investigation revealed that HARRINGTON worked as a real estate agent, property manager for a business she had an ownership interest in, and also worked for another company, Market Graphics.

On September 14, 2005, just months after her alleged neck injury, HARRINGTON activated her real estate license with a broker in Port Orange, Florida, and soon thereafter received a commission check from the real estate company and also ordered and received one thousand business cards for herself as a realtor.  HARRINGTON indicated the website, polygonproperties.com, on her business card in relationship to her preferred email address.  Research of the polygonproperties.com website indicated a copyright date of 2006, and showed a photograph of HARRINGTON and a statement, "My name is Cindy Harrington.  Welcome to my realty website.  I will be listing the latest properties weekly.  Enjoy!"  The properties listed on the website were later identified as properties owned and/or managed by Polygon Properties, LLC, a company HARRINGTON had a fifty percent ownership interest in (her husband owns the other fifty percent interest).  The articles of organization for Polygon Properties, LLC was filed on September 14, 2005, several months after her alleged disabling neck injury.  HARRINGTON was listed as a

managing member and continued to be listed as a managing member in annual reports filed in 2006, 2007, 2008, and 2009.  HARRINGTON also acted as a property manager for Polygon Properties, LLC, which manages properties in South Daytona and Port Orange, Florida, and actively participated in the business by advertising the rentals, showing the properties, signing leases and deposit receipts, signing insurance applications, cleaning the apartments, communicating in writing with tenants, attending housing inspections, and performing other tasks related to the property management.

During the execution of the search warrant, the USPS discovered thousands of documents related to Market Graphics, a company which analyzes housing trends and creates reports to sell to realtors, developers, banks, and other interested groups.  Further investigation revealed that HARRINGTON worked for a local Market Graphics group from October 2008 through the execution of the search warrant in May 2009 and was working on the day the search warrant was executed.  HARRINGTON's job was to drive subdivisions around the Jacksonville, Florida, area and document what she learned about the housing and lots in the subdivisions.  HARRINGTON also pulled surveys from the local court houses and from their online systems.  Emails between HARRINGTON and her employer corroborate her efforts on behalf of Market Graphics, and several witnesses are expected to testify to HARRINGTON's involvement with the business.

### IV.  Expected Trial Duration

The United States expects to call approximately twenty or so witnesses in the trial, and anticipates it can present its case in chief in four days or less, depending on the cross examination and other efforts of counsel for HARRINGTON.

## V. Additional Evidentiary Issues

### A. <u>Summaries and Charts</u>

The United States will introduce several summary exhibits which have been turned over to counsel for HARRINGTON. These summary exhibits are admissible under Federal Rule of Evidence 1006 and corresponding case law. <u>See</u> <u>United States v. Harmas</u>, 974 F.2d 1262, 1269 (11th Cir. 1992); <u>United States v. Daniels</u>, 986 F.2d 451, 455-56 (11th Cir. 1993) (telephone call summary); <u>United States v. Pollack</u>, 417 F.2d 240, 241 (5th Cir. 1969)[5].

### B. <u>Certified Business Records</u>

The United States has formally notified HARRINGTON of its intention to offer certified records of regularly conducted activity into evidence pursuant to Federal Rules of Evidence 803(6) and 902(11). Doc. 33. The United States has received no complaint regarding the authenticity or trustworthiness of these records, which have been turned over in discovery, and will offer them into evidence as self-authenticating documents.

### C. <u>Harrington's Efforts to Abuse the FMLA Leave Policy While at USPS</u>

HARRINGTON's supervisor and another employee have indicated that HARRINGTON abused the FMLA leave policy before claiming a disability by alleging an injury at the same time of year (before the Christmas season) and taking a several month vacation for several years in a row. Because of the regularity of these alleged injuries and other factors, it is believed that HARRINGTON abused the leave policy in a similar way to

---

[5] This opinion of the United States Court of Appeals for the Fifth Circuit is binding precedent under <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (<u>en banc</u>).

how she abused the disability program causing the criminal violations in this case. Moreover, her familiarity with FMLA and rules and regulations pertaining to DOL and USPS shows her willfulness in this case.[6]

Accordingly, the United States maintains evidence of her familiarity with the rules and protocol regarding DOL and USPS and her abuse of the FMLA leave policy are relevant as inextricably intertwined with these offenses.  The United States maintains that this evidence "is not 'extrinsic' under Rule 404(b) and thus falls outside the scope of the Rule."  United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007).  Alternatively, the United States asserts this evidence is admissible under Federal Rule of Evidence 404(b) ("Rule 404(b)") to show motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident.  See Tribble, 209 Fed. Appx. at 340 (permitting evidence of pre-scheme actions by the defendant under Rule 404(b) in a worker's compensation fraud case).   Each argument is discussed in turn.

### 1.  *Intrinsic Evidence Analysis*

Evidence of HARRINGTON's abuse of the FMLA leave policy is not extrinsic, but are rather intrinsic evidence, for several reasons.  First, these actions are "necessary to complete the story of the crime," and "inextricably intertwined with the evidence regarding the charged offense."  Edouard, 485 F.3d at 1344 (quoting United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (quoting United States v. Veltmann, 6 F.3d 1483,

---

[6] Additionally, HARRINGTON's supervisor indicated that HARRINGTON's salary was going to be reduced by approximately $6,000 per year due to a partial automation of her job in the upcoming months after she was injured and further noted that her disability salary was set as of the date of her injury, before the automation was complete.  The United States suggests this is evidence of motive regarding the timing and reason why HARRINGTON then claimed a disabling injury.

1498 (11th Cir. 1993))).

> "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral part of an account of the crime, or is necessary to complete the story of the crime for the jury." And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms "an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."

Edouard, 485 F.3d at 1344 (quoting United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998), and quoting United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989)). Particularly, these facts give "the jury a more, not less, accurate picture of the circumstances surrounding the charged crimes." United States v. Hughes, 213 F.3d 323, 330 (7th Cir. 2000) (regarding previous drug dealing activities) (citations omitted).

## 2.  *Rule 404(b) Analysis*

Alternatively, this testimony is admissible under Rule 404(b), which requires that a three-part test be satisfied.  First, "it must be relevant to an issue other than defendant's character."  Edouard, 485 F.3d at 1344 (citing United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000)).  Second, "there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question." Edouard, 485 F.3d at 1344 (citing Chavez, 204 F.3d at 1317).  Third, "the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403."  Edouard, 485 F.3d at 1344 (citing Chavez, 204 F.3d at 1317).

Because HARRINGTON has entered a not guilty plea, she has made her "intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."  Edouard, 485 F.3d at 1345; United States v.

17

McQueen, 267 Fed. Appx. 880, 882 (11th Cir. 2008) (unpublished) (citing United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998)); United States v. Matthews, 431 F.3d 1296, 1311 (11th Cir. 2005). It does not appear that HARRINGTON will remove intent as an issue based on her anticipated defense of lack of willfulness. See Doc. 41 at 21 (proposed jury instruction for good faith reliance as a defense to willfulness). Moreover, "where the state of mind required for the charged and extrinsic offenses is the same, the first prong of Rule 404(b) test is satisfied." Edouard, 485 F.3d at 1345 (citations omitted). Therefore, as HARRINGTON abused the FMLA leave policy in precisely the same manner as she abuse the disability system, this prong is satisfied.

The testimony of the USPS employees, which is for the jury to weigh, will satisfy the second prong of the analysis.

Several factors bear upon the third step in the Rule 404(b) analysis, including "whether it appear[s] at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." Edouard, 485 F.3d at 1435 (citation omitted). Intent and knowledge are materially disputed issues, as shown from HARRINGTON's plea of not guilty and expected defenses. The charged and extrinsic offenses are extremely similar or provide a motive (to enjoy extended vacations at the expense of the United States) for the fraudulent crimes.

As each of the three aspects of the Rule 404(b) test has been satisfied, the United States respectfully suggests this evidence is admissible and should be considered by the jury. The United States respectfully suggests the Court provide a limiting instruction to the jury regarding its consideration of this evidence, as to limit any unfair prejudice.

## VI.  Conclusion

For the reasons stated, the United States respectfully suggests the Court consider

these issues prior to trial.

Date: March 25, 2010

Respectfully submitted,

A. BRIAN ALBRITTON
United States Attorney


By:    *s/ J. Bishop Ravenel*
J. Bishop Ravenel
Assistant United States Attorney
USA Number 107
501 West Church Street, Suite 300
Orlando, Florida  32805
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:      Bishop.Ravenel@usdoj.gov

19

**U.S. v. CINDY HARRINGTON**                    **Case No. 6:09-cr-180-Orl-31KRS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Harrison T. Slaughter, Jr. (Counsel for Defendant)

*s/ J. Bishop Ravenel*
J. Bishop Ravenel
Assistant United States Attorney
USA Number 107
501 West Church Street, Suite 300
Orlando, Florida  32805
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:         Bishop.Ravenel@usdoj.gov

N:\_Criminal Cases\h\Harrington, Cindy_2008R02496_6-09-cr-180_BXR\Pleadings\Trial Brief - Cindy Harrington - Trial March 29 2010.wpd

20